UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
UNITED STATES OF AMERICA,
:
:
:
  -v-
:
:
RICHARD FRANCO,         :         12 Cr. 932 (PAC)
:
  *Defendant.*
:
:         **OPINION & ORDER**
:
:
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

On May 22, 2020, Defendant Richard Franco ("defendant" or "Franco"), who suffers from severe diabetes, hypertension, and obesity filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. (Def. Mot., Dkt. 221.) In 2014, Franco pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A). (Def. Mem. at 2, Dkt. 223.) Franco has served nearly his entire ten-year sentence, and is due to be released in August 2021. (*Id.*)

Franco contends that his chronic medical conditions including severe diabetes, hypertension, and obesity place him at serious risk of grave illness or death as a result of the COVID-19 pandemic constituting "extraordinary and compelling" circumstances warranting a sentencing reduction. (*See id.* at 3-5.) Franco reports difficulty managing his diabetes and hypertension conditions while in prison, and his documented medical history indicates significant health problems that have persisted during his incarceration. (*Id.*; Gov. Ex. A

1

(Defendant's Medical Records).)

The Government admits that the Defendant has exhausted his administrative remedies. (Gov. Opp'n at 7.) The Government concedes that defendant's health conditions establish "extraordinary and compelling reasons" for his release due to his medical conditions. (Gov. Opp'n at 3.) Nonetheless, the Government opposes the application on the grounds that the Section 3553(a) factors weigh against granting compassionate release. (*Id.*)

COVID-19 has killed more than 100,000 people nationwide. The Court recognizes that COVID-19 has spurred a public health crisis and national emergency with a recommended treatment of social distancing, which is difficult to achieve in federal prison facilities. Current conditions present new and complex challenges for protecting inmates' health and the question of whether compassionate release is warranted during the pandemic remains a dynamic and fact-intensive inquiry.

For the reasons set forth below, defendant's motion is granted.

## COMPASSIONATE RELEASE

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-CR-743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The compassionate release provision allows a district court to "reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." 18 U.S.C. § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Where a defendant has exhausted his administrative requirements or where 30 days from the receipt of such a request has passed with no action by the warden, compassionate release provides a mechanism for a court to reduce a term of imprisonment where, after considering the factors set forth in Section 3553(a), the court finds, "extraordinary and compelling reasons" warrant such a reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). Application Note 1 to U.S.S.G. § 1B1.13 addresses when extraordinary and compelling reasons exist: where the defendant is (i) "suffering from a terminal illness" or (ii) a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or (iii) is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process" in combination with amount of time served, or (iv) if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (B), (D).

In practice, compassionate release motions have required courts to make fact-intensive determinations considering the unique circumstances and context of each individual defendant. *See United States v. Kaba*, No. 19 CR. 242 (PAC), 2020 WL 2520807, at *1 (S.D.N.Y. May 18, 2020); *United States v. Hart*, No. 17 CR. 248 (VSB), 2020 WL 1989299, at *6 (S.D.N.Y. Apr. 27, 2020). Courts in this district have generally considered the age of the defendant; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the presence and proliferation of infections in the prison facility at issue; the proportion of the term of incarceration that the defendant has served; and the sentencing factors in 18 U.S.C. § 3553(a), with an emphasis on the nature and seriousness of the

offense, the need for deterrence, and the need to protect the public. *E.g.*, *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal citations omitted); *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *4 (S.D.N.Y. Apr. 10, 2020).

## APPLICATION

Defendant submitted his application for release to the Warden at FCI Terre Haute on April 16, 2020. *See* Def. Mot. at 2. He has not received a response. (*Id.*) Since 30 days from Franco's request to the warden has lapsed the Government concedes that the Court has the authority to determine the merits of his application. (Gov. Opp'n at 7.) *See* 18 U.S.C. § 3582(c)(1)(A)(i) (stating a court may grant a motion for compassionate release after the "lapse of 30 days from receipt of such a request by the warden of the defendant's facility").

The Court concludes that the circumstances here are sufficiently extraordinary and compelling to justify the defendant's release under 18 U.S.C. § 3582(c)(1)(A)(i). The COVID-19 pandemic's impact on the health of millions of people across the world is evident. As of June 1, 2020, over 6 million people have been infected globally and more than 370,000 have died.[1] Nationwide, the illness has killed more than 100,000 people.[2] Currently, there is no known cure or vaccine. Some of those infected are asymptomatic and thus, may unwittingly infect others. During this pandemic, the virus has not spared Bureau of Prison ("BOP") facilities—affecting both those detained as well as staff working inside the facilities.[3] The spread of the virus in prisons presents an unprecedented threat to "high-risk" incarcerated individuals. The

---

[1] Johns Hopkins University & Medicine, *COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html.

[2] *See id.*

[3] FCI Terre Haute currently has positive COVID-19 cases among inmates and had one inmate death due to COVID-19. *See* Bureau of Prisons, *COVID-19 Cases*, available at https://www.bop.gov/coronavirus/#.

4

defendant's medical conditions—severe diabetes, hypertension, and obesity places him at high-risk of serious illness or death should he be exposed to COVID-19.[4]

The Government concedes that the defendant's medical condition qualifies as "extraordinary and compelling reasons" for release during the current COVID-19 pandemic. (*See* Gov. Opp'n at 8.)  Franco, who is 41-years old, suffers from severe diabetes, hypertension, and obesity (*see* Gov. Ex. A), all three of which are conditions the CDC has identified as posing a heightened risk of severe illness and fatality from COVID-19.  *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): *People Who Are at Higher Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.[5]  In the past year due to his medical conditions, Franco has been classified as a Care Level Three inmate defined as "fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living" because his diabetes "was out of control."  *See* Gov. Ex. A at 92.[6]  Further, Franco's application

---

[4] According to the Center for Disease Control and Prevention (the "CDC"), people with severe diabetes and obesity are at a significantly higher risk for severe illness resulting from COVID-19. *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): *People Who Are at Higher Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[5] On April 17, 2020, the CDC released a report indicating that of those hospitalized for COVID-19 between the ages of 18-49 years old: 59% of patients had obesity; 19.6% had diabetes, and 17.5% had hypertension. *See* Center for Disease Control and Prevention, *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019* — COVID-NET, 14 States, March 1–30, 2020, Morbidity and Mortality Weekly Report, https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_cid=mm6915e3_w.

[6] The Government notes that Franco asked to be classified as a Care Level Two and represents that Franco has now been classified as a Care Level Two patient as he had requested.  *See* Gov. Opp'n at 7.  His medical records indicate that Franco did request a lower classification.  Specifically he wrote to his doctor:

> [I] went to my team today and asked for a transfer closer to home and I was inform[ed] that because of my care level that there is still a possibility I won['t] be transfer[red] close to home because I am a care level 3 what do I have to do to become a care level 2 again I have two daughters I need to get close to home to be able to see them again.  Can you please help me out thank you for your time.

and medical records demonstrate that his health has deteriorated while incarcerated and that he has experienced symptoms of severely unmanaged diabetes, including a significant decline in his eyesight and the loss of seven teeth. *Id.* at 56; Def. Mem. at 4.

Accordingly, the Court concludes that Franco, like other high-risk defendants with the same medical conditions, has demonstrated "extraordinary and compelling" reasons for release during the COVID-19 pandemic. *See e.g.*, *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding defendant's age combined with medical conditions of diabetes, hypertension and obesity, constituted "extraordinary and compelling reasons" to order compassionate release); *United States v. Williams-Bethea*, No. 18-CR-78 (AJN), 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020) (finding defendant's medical conditions of hypertension and obesity were "extraordinary and compelling" circumstances warranting compassionate release).

Next, the defendant's request for compassionate release is consistent with the Section 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. In 2014, Franco pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A) and the Court sentenced him to 120 months. *See* Dkt. 157. At the time of sentencing, the mandatory minimum applied because of Franco's criminal history. At the same time, Franco had compelling mitigating circumstances, including, *inter alia*, his traumatic childhood involving his parents who suffered debilitating heroin addictions, a physically abusive and later absent father, and homelessness prompting him to live in an abandoned building at nine years-old until he and his family were placed in the

---

Gov. Ex. A at 92. The defendant's request and subsequent designation as Care Level Two so that he could be at a facility closer to his family does not alter this Court's conclusion that Franco's medical condition qualifies as "extraordinary and compelling" reasons for release during the COVID-19 pandemic. The Government concurs. *See* Gov. Opp'n at 8.

shelter system.  *See* Dkt. 155.  The Court declined to sentence him to any time above the mandatory minimum.  *See* Sent. Tr. at 6, Dkt. 161 (The Court: "I have no intention of going above the mandatory minimum").

Franco has served almost the entirety his ten-year sentence; he has just over one year remaining and is due to be released in August 2021.  The substantial time that Franco has already served balances the seriousness of his criminal conduct with the need to promote deterrence and respect for the law.  Further, granting compassionate release would not produce a sentencing disparity: Franco's sentence was longer than that of all of his co-defendants because of his applicable criminal history.  *See e.g.*, Dkt. 155.  Finally, the defendant presents a reliable release plan that provides for him living with his sister in Manhattan and he has employment arranged as a warehouse attendant when New York opens and it is safe for him to work.  (Def. Mem. at 3.)  Accordingly, having considered the 3553(a) sentencing factors and applicable policy statements, the Court concludes that granting the defendant's motion for compassionate release is not inconsistent with the goals of sentencing.  In light of the defendant's medical conditions and documented history of difficulty managing his conditions in prison, further incarceration beyond the substantial time served would be greater than necessary.

## **CONCLUSION**

For the reasons stated, the defendant's motion for compassionate release is GRANTED.  The defendant's sentence of incarceration is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).  Upon his release, the defendant shall serve five years of supervised release as previously imposed and is subject to the other conditions previously imposed by the Court as set forth in the judgment dated August 18, 2015.  *See* Dkt. 157.

The Clerk of the Court is directed to terminate the motion at Docket 221.

Dated: New York, New York  
      June 24, 2020

SO ORDERED

*[signature]*

PAUL A. CROTTY  
United States District Judge